# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| LEANNE C. SHOPPELL, as Personal Representative of the ESTATE OF LARRY E. WALKUP, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO. 1:08-CV-284 PS |
| MICHAEL D. SCHRADER, *et al.*, | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Larry Walkup died while he was incarcerated in the Whitley County Jail. Prior to his incarceration, Walkup had been treated for heart conditions. But according to Plaintiff Leanne C. Shoppell (the representative of Walkup's estate), when he got to the Jail it was ill-equipped to care for him. Walkup died of Atherosclerotic Cardiovascular Disease; he had significant plaque buildup in several major arteries. Walkup's death was the result of the inadequate treatment he received while in the Jail's custody, or so the complaint contends.

The present motion addresses only a narrow portion of Shoppell's claims. Specifically, it concerns her argument that the Whitley County Board of Commissioners should be held liable for failing to properly fund the Jail. But because the Whitley County Council - not the Commissioners - is the entity with final policymaking authority with respect to the County's budget, the Commissioners are not the proper party in this case. Therefore, the Commissioners motion to dismiss is granted, and Shoppell is granted thirty days to amend her complaint to name the Whitley County Council.

# I. BACKGROUND

The complaint, which I accept as true at this point in the proceedings, alleges that Walkup died on November 26, 2006, while incarcerated in the Whitley County Jail at the age of 57. (*See* DE 1 ¶¶1 & 15.) An autopsy performed shortly after his death found Walkup's death was caused by Atherosclerotic Cardiovascular Disease and that Walkup had 75% to 100% narrowing of three major arteries. (*Id*. ¶17.) Prior to his incarceration, Walkup had been under the care of a cardiologist, William Baltes, M.D., and Walkup had been prescribed medications for ongoing heart conditions. (*Id*. ¶18.) On March 14, 2006, a physician ordered a blood test and the results indicated Walkup was at high risk of coronary heart disease. (*Id*. ¶20.) Those results were given to the Jail. (*Id*.) Walkup also had other factors that suggested he was at risk of coronary heart disease; he was hypertensive and had a family history of coronary heart disease. (*Id*. ¶¶21-22.)

Shoppell asserts that Walkup's death was caused by the inadequate treatment he received while in the Jail. Specifically, she claims that the Jail failed to conduct proper testing for hyperlipidemia and hypertension, failed to provide Walkup with proper medications, and failed to provide Walkup with access to his own physicians in order to obtain the treatment he needed. (*Id*. ¶23.) Indeed, as of September 6, 2006, the Jail's records showed that Walkup's medications included an anti-depressant, but not hypertension or hyperlipidemia medications. (*Id*. ¶ 24.)

The Jail was on notice of its improper medical care and inadequate staffing, in part because another inmate had died while in its custody. (*Id*. ¶30.) In addition, the Jail received multiple letters from the Department of Corrections alerting it to staffing and facility issues. (*Id*. ¶¶37-39.) The Department of Corrections also recommended the use of an objective inmate

classification system, which helps identify inmates with healthcare needs. (*Id*. ¶¶41-45.)

Of particular note for the present motion, Shoppell alleges that the Commissioners inadequately funded the Jail. (*Id*. ¶¶ 59-67.) She specifically alleges that the County provided insufficient funds to: train Jail personnel to recognize and respond to medical needs, (*Id*. ¶61); staff the Jail with enough personnel to permit hourly cell inspections, (*Id*. ¶62); make healthcare professionals available to inmates with serious medical needs, (*Id*. ¶63); undertake a staffing needs survey to identify potential staffing issues, (*Id*. ¶65); and develop and utilize an objective inmate classification system, (*Id*. ¶66).

## II. DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of claims that fail to state a claim upon which relief can be granted. If the plaintiff can prove no set of facts that would entitle her to relief, dismissal under Rule 12(b)(6) is appropriate. *See Hernandez v. City of Goshen, Ind.,* 324 F.3d 535, 537 (7th Cir. 2003).

The pleading standards were recently retooled by the Supreme Court. In the context of a motion to dismiss for failure to state a claim, the Court stated that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (quotation marks and brackets omitted). Instead the Court held that the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. at 1965. Two weeks later the Supreme Court decided *Erickson v. Pardus*, 127 S. Ct. 2197 (2007). In *Erickson* the Court also took up the issue of pleading standards, but this time in the context of *pro se* litigation. In *Erickson*, the Court stated that

"[s]pecific facts are not necessary" to meet the requirements of Rule 8(a). *Id*. at 2200. In an effort to reconcile *Twombly* and *Erickson* the Seventh Circuit has read those cases together to mean that "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). With that standard in mind, I turn to the question of whether the Commissioners are the appropriate party in this case.

It has long been the case that a *respondeat superior* theory cannot be used to hold a municipality liable under § 1983. *See Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978). Instead, the municipality itself must cause the constitutional violation. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385-86 (1989). A municipality can be liable for a constitutional deprivation under § 1983 when the deprivation is cause by: (1) the municipality's express policy; (2) a wide-spread practice that is so permanent and well-settled as to constitute a custom or usage within the municipality; or (3) a person with final policymaking authority for the municipality. *See Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). *See also Montano v. City of Chi.*, 535 F.3d 558, 570 (7th Cir. 2008).

Regardless of the theory relied upon, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). In addition, a plaintiff must show that the municipality's conduct was deliberate. *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997). In other words, the "plaintiff must show that the

4

municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id*.

The question here boils down to whether the Commissioners have final authority to purposely underfund the Jail.[1] They do not. Under Indiana law, the Commissioners are the executive branch of the County, *see* I.C. § 36-2-2-2, *see also* I.C. § 36-2-3.5-3, whereas the Council is the fiscal body of the County, *see* I.C. § 36-2-3-2, *see also* I.C. § 36-2-3.5-3. The Commission is responsible for preparing budget estimates to give to the Council, *see* I.C. §36-2-3.5-4, and is specifically required to make budget estimates for the Jail, *see* I.C. § 36-2-5-7(10). But ultimately, it is the *Council* that passes the budget. *See* I.C. §§ 36-2-5-2, 36-2-5-3 & 36-2-5-11. Thus, "[w]ith respect to budget issues, the County Council is the relevant policymaker." *Malone*, 2003 WL 22080737, at * 9. *See also Warrick County Comm'rs v. Warrick County Council*, 706 N.E.2d 579, 580 (Ind. Ct. App. 1999) (noting that the county council is traditionally the body charged with appropriating money out of the county treasury).

The Seventh Circuit addressed this issue in *Leffler v. Meer*, 60 F.3d 369 (7th Cir. 1995). *Leffler* involved a pretrial detainee's suicide, which was allegedly caused in part by the county commissioners' inadequate funding of jail personnel and facilities. *Id*. at 371. The case specifically concerned the point at which the claim against the commissioners was frivolous in

---

[1] To be sure, the fact that the Commissioners do not have control over the day-to-day operation of the Jail does not preclude liability as they suggest. (*See* DE 18 at 4-8.) Shoppell's funding theory does not concern how the Jail is run on a day-to-day basis. Instead, the claim concerns the adequacy of the funding given to the Sheriff. That is the bailiwick of the county - or as I conclude, the County Council. *Cf. Malone v. Becher*, No. NA 01-101-C H/H, 2003 WL 22080737, at * 9 (S.D. Ind. Aug. 29, 2003) (noting that the divided responsibilities under Indiana law can sometimes result in a buck-passing blame game between the sheriffs, county commissioners, and county councils when it comes to funding issues).

5

order to determine the appropriate attorney's fees. *Id*. The court found that under I.C. § 36-2-5-3, the county council "clearly possesses the final decisionmaking authority to determine the number of jailers and deputies." *Id*. at 374. Consequently, the plaintiffs "could not have established municipal liability through the [c]ommissioners' failure to hire additional personnel." *Id*. The same was also true for appropriations for certain jail equipment. *Id*. According to the Seventh Circuit, it was a straight-forward case: the council had authority over the budget, the commissioners did not. *Id*. "Further explication of the Indiana statutory scheme defining county governmental bodies [was] not warranted." *Id*.

Shoppell relies on the district court decision in *Miller v. Schrader*, No. 1:08-cv-189, at 15 (S.D. Ind. Aug. 8, 2008) (DE 81), to support the argument that the Commissioners are the appropriate defendants here. (*See* DE 23 at 9-12.) But that case does not address *Leffler*, nor does it confront the statutory scheme that places the budgetary burdens only on the Council. Rather, it simply states the uncontroversial rules that the Commissioners are charged with maintaining the Jail, *see* I.C. § 36-2-2-24, and preparing budget estimates, *see* I.C. § 36-2-5-7, and that the Commissioners are the legal embodiment of the county. Because Indiana's statutory scheme gives fiscal decisionmaking authority to the Council - not the Commissioners - and because the Seventh Circuit's binding precedent holds that the Council - not the Commissioners - is the proper party, I decline to follow *Miller*.

### III. CONCLUSION

The Whitley County Board of Commissioners is not the proper party to sue under Shoppell's "failure to fund" theory. The appropriate body under the Seventh Circuit's precedent and Indiana law is the Whitley County Council. Therefore, the Court hereby **GRANTS** the

6

Commissioners' Motion to Dismiss [DE 17].  The claims against the Whitley County Board of Commissioners are **DISMISSED** and the plaintiff is granted thirty days to amend her complaint to include the Whitley County Council.  If the Plaintiff's theory is that the Commissioners should nevertheless be named for some specific reason (such as the Council appropriated the funds, but the Commissioners did not actually spend the monies), then the Commissioners can be named again, but the allegations must made with sufficient specificity to comply with Federal Rule of Civil Procedure 8.  The Court does not, however, address the merits of the funding theory upon which the present complaint rests.

    **SO ORDERED**.

    ENTERED: March 2, 2009

                                                 s/ Philip P. Simon
                                                 PHILIP P. SIMON, JUDGE
                                                 UNITED STATES DISTRICT COURT