# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| LEANNE C. SHOPPELL, as Personal Representative of the ESTATE OF LARRY E. WALKUP, deceased, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) NO. 1:08-CV-284 PS ) |
| MICHAEL D. SCHRADER, *et al.*, | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Larry Walkup died while in the custody of the Whitley County Jail. Walkup had health problems before he got to the Jail, and Plaintiff Leanne C. Shoppell (the representative of Walkup's estate) says the Jail was ill-equipped to care for him when he got there. Walkup died of Atherosclerotic Cardiovascular Disease; he had significant plaque buildup in several major arteries. The complaint contends that Walkup's death was the result of the inadequate treatment he received while in the Jail's custody.

The last time this case was before the Court, I addressed whether Shoppell's original claims against the Whitley County Board of Commissioners should dismissed. Because the Whitley County Council - not the Board of Commissioners - is the fiscal body of the County, I held that it was the proper defendant, and dismissed the complaint with leave to refile against the Council.

Not surprisingly, the Council doesn't think it should be in the case either. It has moved to dismiss the claims against it, arguing that the complaint fails to state a claim against the Council. In particular, the Council says Shoppell's claims are barred by the statute of

limitations, and that, regardless Shoppell's funding theory isn't a viable claim under 42 U.S.C. § 1983. Because I find that the amended complaint relates back to the original one, Shoppell's claims are not barred by the statute of limitations. Moreover, I am persuaded that Shoppell's theory of the Council's liability - that it inadequately funded the Jail - states a claim upon which relief can be granted. Therefore, the Council's motion to dismiss is denied.

## I. BACKGROUND

The complaint, which I accept as true at this point in the proceedings, alleges that Walkup died on November 26, 2006, while incarcerated in the Whitley County Jail at the age of 57. (*See* DE 30 ¶¶1 & 15.) An autopsy performed shortly after his death found Walkup's death was caused by Atherosclerotic Cardiovascular Disease and that Walkup had 75% to 100% narrowing of three major arteries. (*Id*. ¶17.) Prior to his incarceration, Walkup had been under the care of a cardiologist, William Baltes, M.D., and Walkup had been prescribed medications for ongoing heart conditions. (*Id*. ¶18.) On March 14, 2006, a physician ordered a blood test and the results indicated Walkup was at high risk of coronary heart disease. (*Id*. ¶20.) Those results were given to the Jail. (*Id*.) Walkup also had other factors that suggested he was at risk of coronary heart disease; he was hypertensive and had a family history of coronary heart disease. (*Id*. ¶¶21-22.)

Shoppell asserts that Walkup's death was caused by the inadequate treatment he received while in the Jail. Specifically, she claims that the Jail failed to conduct proper testing for hyperlipidemia and hypertension, failed to provide Walkup with proper medications, and failed to provide Walkup with access to his own physicians in order to obtain the treatment he needed. (*Id*. ¶23.) Indeed, as of September 6, 2006, the Jail's records showed that Walkup's medications

included an anti-depressant, but not hypertension or hyperlipidemia medications. (*Id*. ¶ 24.)

The Jail was on notice of its improper medical care and inadequate staffing, in part because another inmate had died while in its custody, allegedly from poor medical care. (*Id*. ¶30.) In addition, the Jail received multiple letters from the Department of Corrections alerting it to staffing and facility issues. (*Id*. ¶¶37-39.) The DOC also recommended the use of an objective inmate classification system, which helps identify inmates with healthcare needs. (*Id*. ¶¶41-45.)

Of particular note for the present motion, Shoppell alleges that the Council inadequately funded the Jail. (*Id*. ¶¶59-67.) She specifically alleges that the County provided insufficient funds to: train Jail personnel to recognize and respond to medical needs, (*Id*. ¶61); staff the Jail with enough personnel to permit hourly cell inspections, (*Id*. ¶62); make healthcare professionals available to inmates with serious medical needs, (*Id*. ¶63); undertake a staffing needs survey to identify potential staffing issues, (*Id*. ¶65); and develop and utilize an objective inmate classification system, (*Id*. ¶66).

The Council has moved to dismiss the claims against it, presenting essentially two arguments to support its motion. First, it argues that because Shoppell's claim arose on November 26, 2006, and she didn't assert her claim against the Council until March 30, 2009, the claim is barred by the two-year statute of limitations. (*See* DE 41 at 4-5.) Second, it argues that Shoppell's substantive theory of the Council's liability fails. (*See id*. at 5-11.)

## II. DISCUSSION

The minimum requirements for pleading a claim for relief are contained in Federal Rule of Civil Procedure 8. That rule requires "a short and plain statement of the claim showing that the

3

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) meanwhile provides for the dismissal of claims that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

The Supreme Court has retooled its interpretation of the pleading standards in recent years, beginning with its opinion in *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007). In the context of a motion to dismiss for failure to state a claim, the Court stated that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (quotation marks and brackets omitted). More recently, the Court readdressed the *Bell Atlantic* decision and stated: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted).[1] Determining whether a complaint states a plausible claim for relief requires me to draw on my judicial experience and common sense. *Id*. at 1950. And although at this stage I must accept all allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported only by mere conclusory statements. *Id*.

## I. STATUTE OF LIMITATIONS

The parties agree on most of the basics regarding the statute of limitations issue. (*See* DE 41 at 4-5 & DE 42 at 10-11.) The statute of limitations for § 1983 actions is determined by the statute of limitations for personal injury actions in the state where the incident occurred. *King v.*

---

[1] *Iqbal* also expressly held what many courts have presumed since *Bell Atlantic* was decided: *Bell Atlantic* is not limited to antitrust cases; it applies to all civil actions. *See* 129 S. Ct. at 1953.

*One Unknown Fed. Corr. Officer*, 201 F.3d 910, 913 (7th Cir. 2000). That means this case is governed by Indiana's two-year statute of limitations. *See id*. *See also* Ind. Code § 34-11-2-4. Because Walkup's death occurred on November 26, 2006, Shoppell had to file her complaint by November 26, 2008. She filed her original complaint on November 25, 2008, so she made it in before the limitations period ended. (DE 1.) But that complaint named the Commissioners, not the Council. The amended complaint naming the Council wasn't filed until March 30, 2009, (DE 30), after this Court's Order on the first motion to dismiss. So the question is whether the amended complaint relates back to the original one.

Federal Rule of Civil Procedure 15(c) provides the three scenarios where an amended complaint can relate back to an earlier date for purposes of the statute of limitations. The Rule provides, in pertinent part:

> An amendment to a pleading relates back to the date of the original pleading when:
> (A)   the law that provides the applicable statute of limitations allows relation back;
> (B)   the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading; or
> (C)   the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> (i)   received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii)   knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. Pro. 15(c)(1). The Seventh Circuit has interpreted this rule to permit relation back "only where there has been an error made concerning the identity of the proper party and where

that party is chargeable with knowledge of the mistake." *King*, 201 F.3d at 914 (quotation marks omitted).

In this case, subsection A might apply, but Shoppell doesn't really explain how. (*See* DE 41 at 12.) Subsection B does not apply where the amendment changes the party, otherwise subsection C would be superfluous. So that leaves subsection C.

I have no problem finding that the amended complaint should relate back to the original November 25, 2008, filing date under subsection C. The Seventh Circuit has held that this provision "provides for relation back only as a means for correcting the mistakes of plaintiffs suing official bodies in determining which party is the proper defendant." *King*, 201 F.3d at 914 (quotation marks omitted) (quoting *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 560 (7th Cir. 1996). That's precisely the case here. Shoppell thought she had the right branch of the Whitley County government, but she was mistaken. (*See* DE 29.) The amended complaint changes the defendant, naming the Council rather than the Commissioners.

Under Rule 15(c)(1)(C), the amendment to the pleadings must first satisfy Rule 15(c)(1)(B). That is easily met here because the claim is based on the exact same conduct, transaction, or occurrence as the original claim against the Commissioners.

Next, it must be demonstrated that the Council had notice of the action within the time limit provided for by Rule 4(m) – i.e. 120 days. *See* Rule 15(c)(1)(C) (i). Because the original action was against the other arm of Whitley County's government, I am convinced that the proper arm, the Council, had notice of the action. The bottom line is that Shoppell is really trying to bring a *Monell* type claim against Whitley County itself. When Shoppell served the Board of Commissioners with the original complaint, this was service on "Whitley County" because that

6

is the entity that conducts business for the county. Ind. Code § 36-2-2-2. Shoppell's theory in this part of the case is that the Jail was underfunded. The County - not the Sheriff - determines the amount of funds allocated to the Jail. Although *Leffler v. Meer*, 60 F.3d 369 (7th Cir. 1995), makes clear that the Council, rather than the Commission, is the fiscal arm of the County (thereby requiring that the Council be named as the defendant), it slices the county government too thin to say that an amendment switching from one to the other can't relate back.[2] The amended complaint in this case merely substitutes one arm of Whitley County for another. This is just the type of "name-correcting amendment" that is referenced in the Advisory Committee Notes to the 1991 Amendments to Rule 15. The correction in this case therefore satisfies Rule 15(c)(1)(C)(i).

As for subsection (ii), it seems clear that the Council should have known that it was the proper defendant in a lawsuit claiming that the jail was underfunded. As the fiscal body, the Council is the only entity that can fund (and hence underfund) the jail. *Leffler,* 60 F.3d at 374. So subsection (ii) of Rule 15(c)(1)(C) has also been met.

Therefore the relevant filing date for statute of limitations purposes is November 25, 2008, which is within the two-year statute of limitations.

## II. SHOPPELL'S FUNDING THEORY

The Council makes essentially two substantive arguments in favor of dismissal. First, it argues that the complaint's allegations are too speculative. (*See* DE 41 at 5-9.) Second, it

---

[2] The Council's reliance on *Hupp v. Hill*, 576 N.E.2d 1320 (Ind. Ct. App. 1991), is misplaced because that case is about the distinction between a county and its sheriff - which is much different than the distinction between a county council and a county commission.

challenges whether there is really even a cause of action for underfunding a jail. (*See id.* at 10-11.) The first argument takes *Bell Atlantic* too far. The second also misses the mark.

It has long been the case that *respondeat superior* cannot be used to hold a municipality liable under § 1983. *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658 (1978). Instead, the municipality itself must cause the constitutional violation. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385-86 (1989). A municipality can be liable for a constitutional deprivation under § 1983 when the deprivation is caused by: (1) the municipality's express policy; (2) a widespread practice that is so permanent and well-settled as to constitute a custom or usage within the municipality; or (3) a person with final policymaking authority for the municipality. *See Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). *See also Montano v. City of Chi.*, 535 F.3d 558, 570 (7th Cir. 2008).

Part of the reason that *Monell* requires a "policy" when a plaintiff sues a municipality is to ensure that the "municipality is held liable only for those deprivations resulting from decisions of its *duly constituted legislative body*. . . ." *Brown of Coutny Com'rs of Bryan County v. Brown*, 520 U.S. 397, 403-04 (1997) (emphasis added). As noted above, the Council is the fiscal body of the County, *see* I.C. § 36-2-3-2, *see also* I.C. § 36-2-3.5-3, and is ultimately responsible for passing the County's budget, *see* I.C. §§ 36-2-5-2, 36-2-5-3 & 36-2-5-11. Thus, as it relates to budget issues, the County Council is the relevant policymaker. *Malone v. Becher*, No. NA 01-101-C H/H, 2003 WL 22080737, at \* 9 (S.D. Ind. Aug. 29, 2003). *See also Warrick County Comm'rs v. Warrick County Council*, 706 N.E.2d 579, 580 (Ind. Ct. App. 1999). This is the same conclusion the Seventh Circuit drew in *Leffler v. Meer*, because Indiana Code § 36-2-5-3 gave the county council "final decisionmaking authority to determine the number of jailers and

8

deputies." 60 F.3d at 374. That means that the Council is the "duly constituted legislative body" that created the policy about which Shoppell complains.

The Council argues that this case can't fall within the *Monell* framework because the Sheriff is the party responsible for running the Jail. But this misstates the theory against the Council. The theory is not that the Council is liable for the way the Sheriff operated the Jail on a day-to-day basis. Rather, it's that the Council didn't give the Sheriff enough money to operate the Jail. (*See* DE 29 at 5 n.1.) The Council's finger-pointing at the Sheriff – just as the County Commissioners did previously in this case – serves to underscore the observation that Judge Hamilton made in an earlier case:

> Given the divided responsibilities under Indiana law among county councils, boards of commissioners, and sheriffs for county jails, there is a danger in jail condition cases that each entity can blame the others for truly unconstitutional conditions. The sheriff can say that he has no control over the number of inmates assigned to the jail and that he is doing the best he can with inadequate funding from the county council. The county council in turn can blame the sheriff for not doing enough with adequate funding, and so on.

*Malone*, 2003 WL 22080737, at * 9.

The Council also argues that the causal link between the Council and the injury is too tenuous. (*See* DE 41 at 5-9.) *See Brown*, 520 U.S. at 404 ("plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."). In other words, it argues that Shoppell can't show that the Council's funding decision was the "moving force" behind Walkup's death. As a result, the Council concludes, the complaint is so speculative that it can't survive the minimal scrutiny required by *Bell Atlantic*. (*See* DE 43 at 2-3.) In order to do so, the Council says, Shoppell would need to plead "[1] how much funds were

9

needed to be sufficient, [2] whether the funds would have made any difference, and [3] whether the Council knew that the funds were insufficient." (*Id*. at 3.) The Council's reading of *Bell Atlantic* is too constricting.

*Bell Atlantic*'s standard is not a "probability requirement;" the claim for relief must only be "plausible on its face." *Iqbal*, 129 S. Ct. at 1249 (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In this case, that does not mean that Shoppell needs to allege the minimum threshold for funding that the Council needed to allocate; nor does she need to somehow allege that the Sheriff wouldn't mess up the allocation given to the Jail. Those sorts of questions would be more appropriate if I was assessing the probability of plaintiff's success. Instead, I look to the plausibility of her claim. Shoppell's allegations that the Council was responsible for funding the Jail, failed to give the Jail enough money, and the factual allegations concerning Walkup's death are enough to allow me to draw the reasonable inference that the Council is liable. That's all she needs at this point.

Likewise, I don't think Shoppell's funding theory fails as a matter of law. The Council argues that the complaint should be dismissed because Shoppell hasn't shown that her constitutional rights have been violated. (*See* DE 41 at 10-11.) In particular, it says that the failure to comply with state law doesn't violate the United States Constitution, and neither does a violation of the Indiana Jail Standards. (*Id*.) Finally, it contends that Walkup didn't have an independent constitutional right to a classification system. (*Id*.)

All of those points are correct, as far as they go, but they ignore the bigger point that Walkup has a federal constitutional right to be free from cruel and unusual punishment. And §

1983 can be used to vindicate that right. So we are led again to the question of whether Shoppell has stated a claim under *Monell*. And that's not so much a question about whether a violation of state law or the Indiana Jail Standards amounts to a constitutional violation, or whether there is an independent right to a classification system. Rather, the critical question is whether the Council's funding decisions were made with deliberate indifference to Walkup's rights. This theory is more commonly seen in the failure to train context, *see, e.g.*, *Harris*, 489 U.S. at 388-89, but has also been seen in inadequate funding cases, *see Wilson v. Cook County Bd. of Comm'rs*, 878 F. Supp. 1163, 1170 (N.D. Ill. 1995); *see also McDowell v. Brown*, 392 F.3d 1283 (11th Cir. 2004); *McGee v. Barrett*, No. 1:04 CV 2303 TCB, 2006 WL 2567918, (N.D. Ga. Aug. 31, 2006).[3]

It is true that deliberate indifference is an exacting standard of fault, requiring proof that a municipal actor disregarded an obvious effect of his decision. *Brown*, 520 U.S. at 410. Thus, "considerably more proof than the single incident will be necessary in every case to establish both the requisite degree of fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985). That's why the other inadequate funding cases talk about whether the governmental body had notice of the inadequacy of its allocation. *See Wilson*, 878 F. Supp. at 1170 ("[P]laintiff alleges that the Board controls the purse strings and, despite knowledge of the punitive conditions at the Jail, has failed to provide the Sheriff with sufficient funds to alleviate the problems."). *See also McDowell*, 392 F.3d at 1292 (in the summary judgment

---

[3] This has also been used as a theory of liability in Indiana state cases as well. *See Lake County Juv. Ct. v. Swanson*, 671 N.E.2d 429 (Ind. Ct. App. 1996).

context, examining whether the injury at issue was a "highly predictable result" of the allegedly inadequate funding, and whether "*this* budget decision was highly likely to inflict the *particular* injury McDowell suffered") (emphasis in original).

The amended complaint in this case alleges that the Council was on notice that the Jail was inadequately funded. On multiple occasions, the DOC had informed the Jail that it was understaffed. (*See* DE 30 ¶¶37-39.) It had also informed the Sheriff of the need to adopt an inmate classification system. (*Id*. ¶¶43-45.) And prior to Walkup's death there had even been another inmate that died in the Jail's custody, allegedly because of inadequate medical care. (*Id*. ¶30.) It's not an unreasonable inference that the Council was aware of these issues when it made its funding decisions for the Jail. Consequently, Shoppell's claim to relief under her funding theory is plausible enough to go forward. But whether the facts gathered in the discovery process allow the claim to survive summary judgment and convince a jury is a question for another day.

### III. CONCLUSION

For the foregoing reasons, Defendant Whitley County Council's motion to dismiss [DE 40] is **DENIED**.

**SO ORDERED**.

ENTERED: June 30, 2009

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT