**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| **LEANNE C. SHOPPELL, as Personal Representative of the ESTATE OF LARRY E. WALKUP, Deceased,** )<br>)<br>)<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**MICHAEL D. SCHRADER, as Sheriff of Whitley County, Indiana; THE WHITLEY COUNTY SHERIFF'S DEPARTMENT; WENDELL ENYEART, as Administrator of the Whitley County Jail; and the WHITLEY COUNTY COUNCIL,** )<br>)<br>)<br>)<br>)<br>)<br>)<br>**Defendants.** ) | Case No. 1:08CV284-PPS |

## OPINION AND ORDER

Larry Walkup was remanded to the Whitley County Jail on December 16, 2005 after having been convicted of six charges of theft from clients of his insurance and financial planning business. He was also awaiting trial on separate charges in a different case. The medical screening form indicates that, upon his admission into the jail, Walkup reported health issues of alcohol addiction, hernia, and vision or hearing difficulties, but responded negatively to questions regarding heart disease, high blood pressure or other medical problems.

At a time prior to his incarceration, Walkup had been on prescription medicines for treatment of high cholesterol and high blood pressure. The record does not indicate that Walkup was still on those medicines when he arrived at the jail, nor does the evidence indicate that he ever requested such medicines from jail personnel. Instead, Walkup made efforts to obtain a prescription for Ritalin, a treatment for Attention Deficit Hyperactivity Disorder (ADHD). In

notes he wrote in support of those requests, Walkup expressly stated how pleased he was not to be on cholesterol and blood pressure medications.

Walkup had advised the jail's nurse, April Waugh, that he had had heart trouble in the past, but during his incarceration at the jail Walkup never complained to Waugh of ongoing cardiac problems or chest pain. Waugh was aware that Walkup had a history of high cholesterol and high blood pressure prior to his incarceration. Walkup had lost a considerable amount of weight – some 60 pounds since July 2005 – and was exercising regularly by walking every day. Walkup's blood pressure and cholesterol were monitored by Nurse Waugh and the jail's physician, Dr. Paul Blusys. Blood work was ordered by the prison medical personnel in March 2006. The results showed higher-than-ideal cholesterol levels, but lower total cholesterol and triglyceride numbers than those reflected in the pre-incarceration medical records from November 2004 which Waugh reviewed. Notified of those results, Dr. Blusys declined to prescribe medications in response.

On November 26, 2006 at approximately 6:20 a.m. jail officer Curt Anderson was walking past Walkup's cell pushing a medication cart when Walkup stopped him and asked for a Tylenol. After giving him the pill, Anderson asked Walkup if he was all right, and Walkup responded that he was fine. Walkup died later that day. He had been in custody for about 11 months. An autopsy was performed, and the cause of death was reported to be "Atherosclerotic Cardiovascular Disease" which in layman's terms is hardening of the arteries causing blockage of blood flow into the heart.

Walkup's daughter Leanne Shoppell brings this lawsuit as personal representative of Walkup's estate, making federal constitutional claims and supplemental state law claims based

on Walkup's death while in the county's custody. Defendant Michael D. Schrader is the Sheriff of Whitley County, and defendant Wendell Enyeart is the Jail Administrator. Shoppell contends that the jail's nurse and doctor – April Waugh, R.N. and Dr. Paul Blusys – failed to do proper testing and prescribe proper medications to treat Walkup's high cholesterol and high blood pressure, and that these failures were the result of numerous acts and omissions by the named defendants. Yet oddly enough, neither Waugh nor Blusys are named as defendants in this action.

Count I of Shoppell's complaint contains claims against Sheriff Schrader and Administrator Enyeart under 42 U.S.C. §1983. Count II is identified as a claim for the Sheriff's and the Administrator's failure to supervise. Although the complaint refers to state law causes of action under the court's supplemental jurisdiction and to the Indiana Tort Claims Act, neither the complaint nor the summary judgment record ever clarify what state law claims are asserted. Count III is Shoppell's claim against the Whitley County Council under §1983 for inadequately funding jail operations.

The Sheriff, the Jail Administrator, and the separately named Sheriff's Department all seek summary judgment, as does the Whitley County Council. To begin with, Shoppell tells me that because she has sued the Sheriff in his official capacity, she does not seek a separate judgment against the Sheriff's Department. [DE 70, p.5, n.3.] So summary judgment will be granted to the Sheriff's Department without further comment.

**Summary Judgment Standards**

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp.*

*v. Catrett*, 477 U.S. 317 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986.) "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a summary judgment motion "may not rely merely on allegations or denials in its own pleadings" but rather must introduce affidavits or other evidence to "set forth specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

At this stage, it is insufficient for the complaint to have merely pled claims in a legally viable manner. Rather, the plaintiff must demonstrate that she has evidence to support her claims. In other words, it's put up or shut up time. Unfortunately, Shoppell's opposition to the motions for summary judgment relies heavily on citations to her complaint, which of course is not evidence. Indeed, defendants Schrader and Enyeart tell me that Plaintiff has failed to undertake any discovery in connection with this litigation. Pursuant to N.D.Ind. Local Rule 56.1(b), the consequences of failing to demonstrate the existence of genuine fact disputes are significant:

> the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits and other admissible evidence on file.

Because defendants have done what the applicable rules require in support of their motions for summary judgment, and because plaintiff has failed successfully to demonstrate the existence of genuine disputes of those facts specifically stated and properly supported by defendants, I find that the facts set forth above "are admitted to exist without controversy." N.D.Ind. L.R. 56.1(b).

## I. Sheriff Schrader and Administrator Enyeart's Motion for Summary Judgment

Shoppell claims that her dad received inadequate medical care while detained at the Whitley County Jail. A jail official violates an inmate's rights under the Eighth Amendment (in the case of a convicted prisoner) or Fourteenth Amendment (in the case of a pretrial detainee) if he displays "deliberate indifference to a serious medical need." *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 301 (7th Cir. 2010); *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008); *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007). There is simply no evidence of deliberate indifference in this case.

Shoppell has made the unconventional choice to not sue Nurse Waugh or Dr. Blusys – the people with the immediate responsibility for Walkup's medical care. Shoppell nonetheless attempts, in essence, to argue their liability. But the Sheriff has presented evidence that Nurse Waugh and Dr. Blusys continually reviewed Walkup's medical history and actively monitored his health. He had regular check-ups with both of them. The evidence further shows that Walkup was exercising every day, had lost weight, and had weaned himself off of prescription drugs while incarcerated. While it is true that Nurse Waugh and Dr. Blusys were aware that Walkup had some history of high cholesterol and high blood pressure, the trend was actually moving in a positive direction; his health appeared to be improving while in custody. The bar for establishing deliberate indifference is very high. *Collins v. Seeman*, 462 F.3d 757, 762 (7th

5

Cir. 2006); *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). And these facts do not come close to meeting that rigorous standard.

As for the claims against Sheriff Schrader and Administrator Enyeart, it is a little unclear whether Shoppell has sued them in their individual capacities. If she has, it is plainly a nonstarter because "individual liability under §1983 requires 'personal involvement in the alleged constitutional deprivation.'" *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010). Shoppell offers no evidence that the Sheriff or Jail Administrator had any knowledge of Walkup's condition or any personal involvement in his medical care, and so cannot establish that either defendant had "subjective knowledge of the risk to the inmate's health and...disregard[ed] that risk." *Thomas*, 604 F.3d at 301. Personal liability against Schrader or Enyeart in their individual capacities based on the usual standard of "deliberate indifference" to medical needs is therefore not available.

The real gist of Shoppell's case is the official capacity claim against Sheriff Schrader and Administrator Enyeart. Such claims against the Sheriff and Jail Administrator in their official capacities are treated as claims against Whitley County itself. *Clancy v. Geithner*, 559 F.3d 595, 599 (7th Cir. 2009). A governmental entity may not be held liable under §1983 based on a theory of respondeat superior or vicarious liability. Instead, Whitley County is liable only for constitutional violations caused by: (1) an official policy adopted and promulgated by jail officers; (2) a governmental practice or custom that, although not officially authorized, was widespread and well settled; or (3) an official with final policy-making authority. *Monell v. Department of Social Services of New York,* 436 U.S. 658, 694 (1978); *Valentino v. Village. of S. Chi. Heights,* 575 F.3d 664, 674 (7th Cir.2009).

The claims asserted in Counts I and II predicate liability of Schrader and Enyeart on their alleged failure to properly train jail personnel and their alleged failure to adequately staff the jail. A failure to properly train staff can be an unconstitutional policy under *Monell*. *See Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007). But in the absence of a showing that those personally responsible for Walkup's medical treatment acted in an unconstitutional manner – in this case Nurse Waugh and Dr. Blusys – a failure to train theory cannot succeed. This is because "there can be no liability under *Monell* for failure to train when there has been no violation of the plaintiff's constitutional rights." *Jenkins,* 487 F.3d at 492. The Seventh Circuit has held that the existence of an underlying constitutional violation on the part of those directly involved is a prerequisite to municipal (or in this case county) liability on a theory of failure to train or failure to institute an appropriate policy. *Thurman v. Village of Homewood*, 446 F.3d 682, 686 (7th Cir. 2006); *Windle v. City of Marion*, 321 F.3d 658, 663 (7th Cir. 2003). Case law is rife with examples in which courts have held that there can be no municipal or supervisory liability on theories of failure to train, failure to supervise or failure to fund where there was no underlying violation of constitutional rights. *See King v. East St. Louis School District 189*, 496 F.3d 812, 817 (7th Cir. 2007) ("It is well established that there can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of...constitutional rights."); *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007) (same)*; Boyd v. Nichols*, 616 F.Supp.2d 1331, 1344 (M.D.Ga. 2009) (failure to fund theory)**.**

Even if it were established that Waugh and Blusys were somehow deliberately indifferent to Walkup's medical needs, Shoppell would also have to show that the unconstitutional policy – in this case the failure to train – somehow caused the injury. *Thomas v. Cook County Sheriff's*

7

*Department*, 604 F.3d 293, 303 (7th Cir. 2010); *Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir.2002). As the Seventh Circuit has noted: "In applying the different theories of liability recognized under *Monell*, we have always required plaintiffs to show that their injuries were caused by the policies or practices complained of." *Thomas*, 604 F.3d at 306; *Rome v. Meyers*, 353 Fed.Appx. 35, 36 (7th Cir. 2009).

As mentioned above, Counts I and II predicate the liability of Schrader and Enyeart on their alleged failures as to the training of jail staff and inadequate staffing. Count I characterizes the acts and omissions as demonstrating deliberate indifference to Walkup's serious medical need, and Count II, premised on the same acts and omissions, alleges Schrader and Enyeart's liability on a theory of failure to supervise. A fatal problem with both theories is the total lack of proof. Shoppell offers no evidence demonstrating what the training, staffing and policies of the jail were, much less evidence supporting the necessary link of causation between these matters and Walkup's death. For Shoppell to make a case that certain policies led to Walkup's death, even on a common law negligence basis (let alone the higher constitutional standard), she needs to have evidence of what the challenged policies were, and how they contributed to or caused the death of Mr. Walkup. Defendants suggest that Shoppell has not done any discovery, and Shoppell's untenable reliance on the mere allegations of her complaint on these and other matters does not suggest otherwise.

Shoppell points to a previous incident involving the death of another inmate as proof of a an unconstitutional policy. But she cites only to her complaint to support this theory. [DE 70, p.15]. No evidence of the facts and circumstances of that incident is offered, and Shoppell makes no showing of the relevance of the incident to Walkup's death and a common thread of a

custom or policy. And in any event, even if such evidence existed, it wouldn't be enough. It's clear that the occurrence of two such incidents, without more, are not enough to make an actionable *Monell* claim under § 1983. *Thomas,* 604 F.3d 293, 303 (7th Cir. 2010).

In response to the summary judgment motion, Shoppell also focuses on her contention that the Sheriff and Administrator failed to seek adequate funds to remedy a number of alleged shortcomings of jail operations, chiefly in order to offer a salary sufficient to "provide a competent and motivated Jail physician." [DE 70, pp.15-16]. But some expert testimony would be necessary to support any theory about inadequate funding of the jail generally, as well as the inadequacy of the particular aspects of jail operations referred to in Shoppell's allegations, and the complex web of causation required to establish responsibility for Walkup's death. No such expert testimony is offered.

Summary judgment in defendants' favor is warranted on Counts I and II of the complaint. Shoppell does not show herself able to offer proof of any unconstitutional policy adopted or condoned by Schrader and Enyeart, or any unconstitutional conduct engaged in by them personally, much less a causal link between such policy or conduct and Walkup's death. What state law claims Shoppell makes is unclear, but both state constitutional and tort claims would also be defeated by the insurmountable gaps in her proof of personal responsibility and causation. Schrader and Enyeart are therefore entitled to judgment as a matter of law on Counts I and II. *Minix v. Canarecci*, 597 F.3d 824, 832-33 (7th Cir. 2010).

## II. Whitley County Council's Motion for Summary Judgment

Count III of the complaint contains Shoppell's claim against the Whitley County Council. Shoppell claims that the Council's funding of the County Jail was insufficient to enable the jail

9

to be operated at standards required by the Constitution and Indiana law with respect to the provision of medical care to inmates. The County Council seeks summary judgment on several bases.

First, the Council invokes the principle discussed above that, in the absence of a successful underlying substantive claim of constitutional violation by individual government officers, there can be no governmental liability, citing *Windle*, 321 F.3d at 663, *Jenkins*, 487 F.3d at 492, and *Boyd v. Nichols*, 616 F.Supp.2d 1331, 1344 (M.D.Ga. 2009), a Georgia case in which this principle was applied to a failure to fund theory. Because Shoppell fails to demonstrate that Walkup's death resulted from unconstitutional medical care while in the jail, there can be no inconsistent conclusion that the County is liable for underfunding that led to such unconstitutional medical care. *Thomas*, 604 F.3d at 305.

Second, the Council provides the affidavit of the County Auditor as evidence of the funding of the jail, supported by exhibits including Council minutes and the Sheriff's budget requests. The records and affidavit demonstrate that each year from 2003 through 2006, the amount the Sheriff requested for a jail physician's salary was approved by the County Council. The jail's budget for 2006, the year in which Walkup died, was over $100,000 greater than the previous year, an increase of over 10% of the approximately $1,000,000 jail budget, and included within it an increase of over 16% in funding for salaries and wages for jail personnel generally. The Council also points to Shoppell's answers to interrogatories, in which plaintiff repeatedly acknowledges her inability to support her assertions of inadequate funding and the resulting constitutional inadequacies alleged.

Shoppell's response to the Council's use of the undisputed budget data and her interrogatory answers is to suggest that they are "insufficient to overcome the allegations made in the Complaint or the available evidence." [DE 67, p.7]. But it is Shoppell who is unable to overcome the necessary hurdles. The complaint is, of course, not evidence as to the necessary levels of funding to adequately operate the jail, or as to the chain of causation leading from such funding to the death of Larry Walkup. The "available evidence" to which plaintiff refers appears to be Inspection Reports of the jail by the Indiana Department of Corrections for 2002, 2003 and 2004 reportedly recommending that a staffing analysis be done. The problem is that the three inspection reports have not been filed with the court and so are certainly not "available evidence." *See* DE 69 & 72.

Even assuming such reports exist, are admissible, and contain the conclusions represented, there is considerable factual and inferential ground to be covered between these staffing analysis recommendations in 2004 and the death of Larry Walkup in 2006, and Shoppell offers no expert testimony or other evidentiary basis for the necessary conclusions. Instead, Shoppell merely suggests, unpersuasively, that "the circumstances surrounding decedent's untimely death support the inference that inadequate funding by the Council was the problem" and that "[a] fair inference from these facts is that the funding for the Jail physician...was insufficient to attract a physician who would detect life threatening conditions...and take action to treat hyperlipidemia in an inmate whose tests clearly identified a high risk of CHD" (coronary heart disease). [DE 67, p.9]. These "inferences" are actually just speculation, and they are wholly inadequate to support a verdict in Shoppell's favor.

In summary: as it relates to the claims against the Whitley County Council, Shoppell has failed to establish an underlying constitutional violation causing Walkup's death, and failed to offer a viable theory and supporting evidence for a conclusion that the Council's funding of jail operations was insufficient and thereby a causative force in a constitutional violation that led to the death. The Council's motion for summary judgment will also be granted.

## Conclusion

The Motion for Summary Judgment of defendants Michael Schrader, Whitley County Sheriff's Department and Wendell Enyeart [DE 62] is GRANTED.

The Motion for Summary Judgment of defendant Whitley County Council [DE 56] is GRANTED.

The Clerk shall enter judgment accordingly.

**SO ORDERED.**

ENTERED: September 22, 2010

    /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT